UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                  :

In re Application of DAVID GODFREY,    :
YUKOS FINANCE B.V. and YUKOS        :    No. ____
INTERNATIONAL UK B.V. for an order to   :
conduct discovery for use in a foreign     :
proceeding.                                :

------------------------------------------------------x



15 MISC 325

RECEIVED
OCT 05 2015
U.S.D.C. S.D. N.Y.
CASHIERS

**MEMORANDUM IN SUPPORT OF PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FROM VR CAPITAL GROUP, JEFFREY JOHNSON AND RICHARD DEITZ FOR USE IN A FOREIGN PROCEEDING**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

*Attorneys for Petitioners David
Godfrey, Yukos Finance B.V., and
Yukos International UK B.V.*

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................ 1

II.  RELEVANT FACTS .................................................................................. 4

    A.   The Dutch Proceedings ..................................................................... 4

        1.   The Main Action ................................................................... 4

        2.   The Damages Action.............................................................. 5

    B.   The Witnesses ................................................................................... 6

        1.   Jeffrey Johnson ..................................................................... 6

        2.   Richard Deitz ........................................................................ 7

        3.   VR ......................................................................................... 8

    C.   The Russian Government's Campaign Against Yukos Oil ................ 9

    D.   Auction of Yukos Finance's Assets ................................................ 10

    E.   VR's Participation in the Yukos Finance Auction............................ 11

    F.   Johnson and Deitz Participated In and Have Knowledge of the Yukos
        Finance Auction ............................................................................. 11

    G.   Previous Efforts of Other Parties to Obtain Discovery Under 28 U.S.C. §
        1782 in the Southern District Of New York and the Northern District Of
        Texas .............................................................................................. 12

III. SECTION 1782 AUTHORIZES THE THIRD-PARTY DISCOVERY
    PETITIONERS SEEK, AND THE DISCRETIONARY FACTORS WEIGH
    HEAVILY IN FAVOR OF GRANTING PETITIONERS' REQUESTED
    DISCOVERY ......................................................................................... 15

    A.   Applicable Legal Principles............................................................ 15

    B.   The Information Sought Is Highly Relevant and Presumptively
        Discoverable .................................................................................. 17

    C.   Petitioners' Request Meets the Statutory Requirements of Section 1782 .......... 18

        1.   Johnson, Deitz and VR Are Found Within this District ........................ 18

        2.   The Discovery Sought Is Intended For Use in a Foreign Proceeding...... 19

**TABLE OF CONTENTS**

(continued)

Page

   3. Each of the Petitioners Is an Interested Person ........................................ 20

  D. The *Intel* Discretionary Factors Weigh Heavily In Favor of Granting Petitioners' Application ..................................................................................... 20

   1. The Witnesses Are Not Parties to the Dutch Proceedings ...................... 20

   2. The Nature of the Foreign Tribunal, the Character of the Dutch Proceeding and the Amsterdam Court's Receptivity to Assistance Favor Granting Petitioners' Application .................................................. 21

   3. This Application Is Not an Attempt to Circumvent Dutch Law or Policy .................................................................................................. 23

   4. The Discovery Is Neither Unduly Burdensome Nor Intrusive ............... 24

  E. Ex Parte Relief Is Appropriate Under Section 1782(a) ...................................... 25

IV. CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
785 F. Supp. 2d 434 (S.D.N.Y. 2011) ............................................................... 19, 20

*Brandi-Dohrn v. IKB Deutsche Industriebank*,
673 F.3d 76 (2d Cir. 2012) ................................................................................. 21

*Gushlak v. Gushlak*,
486 F. App'x 215 (2d Cir. 2012) ........................................................................ 18

*Halliburton Energy Servs., Inc. v. M–I, LLC*,
No. H06MC00053, 2006 WL 2663948 (S.D.Tex. Sept. 15, 2006) ........................ 19

*Hickman v. Taylor*,
329 U.S. 493 (1947) ........................................................................................... 24

*Hulley Enter. Ltd. v. The Russian Fed'n*,
PCA Case No. AA 226, Final Award (Jul. 18, 2014),
*available at* http://www.italaw.com/cases/544 ................................................... 10

*In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*,
121 F.3d 77 (2d Cir. 1997) ................................................................................. 16

*In re Application of Chevron Corp.*,
709 F. Supp. 2d 283 (S.D.N.Y. 2010), *as corrected* (May 10, 2010),
*aff'd sub nom Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) ............... 16

*In re Application of David Godfrey and Bruce Misamore*,
No. 3:08-mc-00107 (N.D. Tex. Sept. 8, 2008) ............................................. 13, 14, 22

*In re Application of David Godfrey and Stichting Administratiekantoor Financial
Performance Holdings*,
No. 14 Misc. 00316 (S.D.N.Y Sept. 22, 2014) ................................................ 14, 15

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
CIV.M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ........................... 20

*In re Application of Proctor & Gamble Co.*,
334 F. Supp. 2d 1112 (E.D. Wis. 2004) ............................................................... 22

*In re Application of Yukos HydroCarbons Inv. Ltd.*,
No. 5:09-MC-00078 (NAM, DEP), No. 22, 2009 WL 5216951 (N.D.N.Y. Dec. 30,
2009) ................................................................................................................. 14

*In re Bank of Cyprus Pub. Co. Ltd.*,
2011 WL 223168 (S.D.N.Y. Jan. 21, 2011) ........................................................ 19

*In re Bayer AG*,
146 F.3d 188 (3d Cir. 1998) ................................................................... 4, 15, 16, 23

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv.*
*Grp. LLC,*
2014 WL 3404955 (S.D.N.Y. July 9, 2014) ........................................................... 19

*In re Chevron Corp.,*
2010 WL 8786202 (D.N.M Sept. 13, 2010) ........................................................... 22

*In re Duizendstraal,*
No. 3:95-mc-150-X, 1997 WL 195443 (N.D. Tex. April 16, 1997) ........................ 22

*In re Edelman,*
295 F.3d 171 (2d Cir. 2002) .................................................................................. 18

*In re Godfrey,*
526 F. Supp. 2d 417 (S.D.N.Y. 2007) .................................................................... 13

*In re Kreke Immobilien KG,*
2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ......................................................... 19

*In re Qwest Communications Intern. Inc.,*
2008 WL 2741111 (W.D.N.C. July 10, 2008) ....................................................... 22

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP*
*Pursuant to 28 U.S.C. sec. 1782,*
2015 WL 3855113 (S.D.N.Y. June 22, 2015) ........................................................ 22

*In re Sarrio S.A.,*
173 F.R.D. 190, 193 (S.D. Tex. 1995) .............................................................. 16, 24

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004) .......................................................................... 3, 16, 20, 21, 23

*John Deer Ltd. v. Sperry Corp.,*
754 F.2d 132 (3d Cir. 1985) .................................................................................. 25

*Lancaster Factoring Co. v. Mangone,*
90 F.3d 38 (2d Cir. 1996) ...................................................................................... 20

*London v. Does 1-4,*
279 F. App'x 513 (9th Cir. 2008) ........................................................................... 24

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.,*
No. 1:08-CV-268 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y Aug. 18, 2008) ........ 23

**Statutes**

28 U.S.C. § 1782(a) ...................................................................................................... 15

**Other Authorities**

Dutch Supreme Court, February 6, 1998, NJ 1999, 479 (*Kinetics Tech. Int'l v. Mol*) ........ 22

Senate Report at 8, 1964 U.S.C.C.A.N. ........................................................................... 20

## I.    INTRODUCTION

David A. Godfrey, Yukos Finance B.V. ("Yukos Finance") and Yukos International UK B.V. ("Yukos International") (collectively, the "Petitioners") respectfully submit this memorandum of law in support of their application, pursuant to 28 U.S.C. § 1782, for limited third-party discovery necessary to their litigation of two actions pending in the Netherlands. The first action (the "Main Action") was brought by Yukos Finance and its directors David Godfrey and Bruce Misamore. The second action (the "Damages Action", and, together with the Main Action, the "Foreign Proceedings") was brought by Yukos International, an affiliate of Yukos Finance. The Foreign Proceedings are currently before the Court of Appeals of Amsterdam. (Dutch Courts of Appeal permit the submission of new evidence prior to final pleadings, which have not yet been scheduled in the Foreign Proceedings and are anticipated to take place in the first half of 2016.)

OAO NK Yukos Oil Company ("Yukos Oil") was expropriated by the Russian Federation in a series of rigged auctions designed to allow Russian-state owned entities to acquire Yukos Oil's assets. VR Capital Group ("VR"), of which Jeffrey Johnson was the Chief Financial Officer at the relevant time, and Richard Deitz served as President, participated together with other investors (the "Consortium") in the rigged auctions and masterminded the funding structure for the purchase of Yukos Oil assets sold in "Lot 19" on August 15, 2007, which included Yukos subsidiary Yukos Finance. VR, Deitz and Johnson knew that the Consortium was negotiating with the Russian state-owned oil company Rosneft Oil Company ("Rosneft") before the auction as to who would be the winning bidder for certain assets, including Lot 19, which included Yukos subsidiary Yukos Finance.

The Foreign Proceedings thus arise from the rigged auction of Lot 19. The Main Action comprises parallel appeal proceedings concerning the ownership of the shares in Yukos Finance.

At its core, at issue in the Main Action is whether the Yukos Oil bankruptcy, controlled by Eduard Rebgun (the bankruptcy trustee), and its consequences should be recognized in the Netherlands. Petitioners intend to use the requested discovery from VR (a direct participant in the auction process), Deitz (at the time President of VR and currently a key player in several entities that control, fund, and advise VR), and Johnson (also a high level executive at VR) to support their assertions that: (i) the actions taken by Rebgun, including his collusion with OOO Promneftstroy ("Promneftstroy") (which the Consortium obtained from Rosneft to purchase Lot 19) and Rosneft in rigging the auction, are without effect in the Netherlands; and (ii) recognition of Promneftstroy's claim to the shares in Yukos Finance contravenes Dutch public order.

The Damages Action is comprised of appeal proceedings where Yukos International (a company within the corporate structure headed by Yukos Finance) seeks damages from Promneftstroy and its managing director Stephen Lynch resulting from the unlawful enforcement of a freezing order requested by Promneftstroy and Lynch for the alleged purpose of safeguarding their claims. Petitioners intend to use discovery from VR to support their position that Promneftstroy and Lynch requested the freezing order in bad faith based on their collusion with Rosneft and Rebgun to rig the auction of Yukos Finance, and therefore should be held liable for the damage inflicted on Yukos International by unlawfully enforcing the Freezing Order.

As Chief Financial Officer of VR, Johnson participated in the sham auction through which Promneftstroy, with the support of and due to the involvement of Rosneft, purportedly acquired the shares of Yukos Finance. As President of VR, Deitz likewise played a key role in the events leading up to the winning bid for Yukos Finance. Indeed, Deitz continues to take an active role in Promneftstroy's ongoing attempt to benefit from the rigged auction. On September 9, 2015, Promneftstroy filed an application for discovery pursuant to Section 1782 in this Court

in connection with the Foreign Proceedings. Deitz attended the hearing before Judge Koetl. Declaration of Robert Serio, dated September 29, 2015 ("Serio Decl."), at ¶ 7.

Additional details of the relationships between and among VR, Rosneft, and Rebgun as well as details about the Yukos Finance auction and the participation of Johnson, Deitz and VR in the financing and management of Promneftstroy – are likely to further support Petitioners' position in the Main Action that: (i) the actions taken by Eduard Rebgun, including his collusion with Promneftstroy and Rosneft in rigging the auction, render all of Rebgun's actions without effect in the Netherlands; and (ii) recognition of Promneftstroy's alleged entitlement to the shares in Yukos Finance would contravene Dutch public order. The requested discovery will also likely further support Petitioners' position in the Damages Action that Rosneft and the Consortium, including Stephen Lynch, were scheming together to rig the auction.

Section 1782 enables foreign litigants to obtain evidence from persons located in the United States in aid of a foreign proceeding. Petitioners' Application ("Application") seeks limited discovery in the form of: (i) a deposition of Johnson, an individual who resides in the Southern District of New York;[1] (ii) a deposition of Deitz, an individual who both regularly visits and transacts business in this District in connection with his position as a control person, director, manager, owner, funder, and president of VR Advisory Services Ltd. and VR Global Partners L.P., in addition to several other related entities; and (iii) document discovery responsive to narrowly tailored requests from Johnson, Deitz and VR. Petitioners meet each of the requirements for discovery under Section 1782. *See, e.g., Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249, 264-65 (2004). Where, as here, the information sought is

---

[1] Johnson currently lives in Westchester County and works for VR in New York. Johnson is the acting Chief Operating Officer of VR and was the Chief Financial Officer at VR for over ten years, including during the relevant period when VR obtained its shares in Promneftstroy through a series of shell companies.

relevant, it is "presumptively discoverable" under Section 1782. *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998). Petitioners thus respectfully request that this Court grant their Application.

## II.      RELEVANT FACTS

### A.      The Dutch Proceedings

#### 1.      The Main Action

In September 2006, Yukos Finance and its directors David Godfrey and Bruce Misamore initiated proceedings before the District Court of Amsterdam against Yukos Oil's bankruptcy trustee Eduard Rebgun and two of Yukos Oil's directors who Rebgun allegedly appointed following the company's bankruptcy. Declaration of Eelco R. Meerdink, dated September 16, 2015 ("Meerdink Decl."), ¶ 7. Yukos Finance, David Godfrey, and Bruce Misamore sought an order from the Court declaring that actions taken by Rebgun had no effect in the Netherlands. *Id.* On October 31, 2007, the District Court of Amsterdam held that the actions taken by Rebgun had no effect in the Netherlands because the bankruptcy of Yukos Oil contravened fundamental principles of due process and thus violated Dutch public order. *Id.*

In the subsequent two parallel appeal proceedings, Promneftstroy intervened as an interested party, claiming it had acquired the shares in Yukos Finance in a bankruptcy auction organized by Rebgun and held on August 15, 2007. *Id.* at ¶ 8. Yukos Finance, Godfrey and Misamore argued, amongst other things, that the District Court's October 31, 2007 judgment should be upheld and that because the actions taken by Yukos Oil's bankruptcy trustee Eduard Rebgun are without effect in the Netherlands, Promneftstroy's claim to the shares in Yukos Finance cannot be recognized. Petitioners argued that Promneftstroy participated in a rigged auction whereby the "winner" and the "winning" bid were pre-determined. Further, Plaintiffs argued that the manner in which Promneftstroy allegedly acquired the shares in Yukos Finance contravened Dutch public order. *Id.* at ¶ 9.

On October 19, 2010, the Court of Appeals of Amsterdam held that Rebgun's powers, which were granted pursuant to Russian bankruptcy law, are not recognized under Dutch law irrespective of whether the bankruptcy of Yukos Oil and the auction of the shares in Yukos Finance violated Dutch public order. *Id.* at ¶ 10. On September 13, 2013, the Dutch Supreme Court set aside the October 19, 2010 judgment, and directed the Court of Appeals of Amsterdam to assess the merits of the grounds for the appeals against the District Court's ruling. It is anticipated that the Court of Appeals will schedule oral arguments to take place in the first half of 2016. *Id.* at ¶ 11-12.

### 2. The Damages Action

The Damages Action concerns proceedings in which Yukos International (an affiliate of Yukos Finance) seeks damages from Promneftstroy and its managing director Stephen Lynch resulting from the unlawful enforcement of a freezing order. In March 2008, Promneftstroy together with Rosneft, sought and obtained an injunctive order from the President of the District Court of Amsterdam for the alleged purpose of safeguarding their claims, requiring Yukos International and its directors to keep certain funds in a bank account and to not dispose of the funds subject to a penalty of 10 million Euros for each violation of the order. *Id.* at ¶ 14.

On January 7, 2011, the Dutch Supreme Court set aside the judgment of the President of the District Court of Amsterdam; as a result, the Freezing Order was cancelled. *Id.* at ¶ 15. Yukos International filed a claim against Rosneft, Promneftstroy and Stephen Lynch for damages suffered resulting from the enforcement of the Freezing Order. *Id.* at ¶ 16. On February 11, 2015, the District Court of Amsterdam decided that the enforcement of the Freezing Order by Rosneft and Promneftstroy was unlawful, awarded the claims against Rosneft and Promneftstroy and referred the case to follow-up proceedings for the determination of damages. The claim against Lynch was dismissed. *Id.* at ¶ 17.

Yukos International and Rosneft subsequently reached an out of court settlement. Yukos International initiated an appeal against the February 11, 2015 judgment to the extent that it pertains to: (i) the determinations regarding the damages and the referral to the follow-up proceedings for the determination of damages; and (ii) the dismissal of the claim against Lynch. Promneftstroy also appealed the February 11, 2015 judgment. Petitioners anticipate that the Court of Appeals of Amsterdam will schedule oral arguments to take place in the first half of 2016. *Id.* at ¶ 18.

**B.   The Witnesses**

**1.   Jeffrey Johnson**

Jeffrey Johnson is an individual found in the Southern District of New York. Johnson currently resides at 30 Cohawney Road, Scarsdale, Westchester County, New York, a property he purchased in June, 2013. Serio Decl., ¶ 5. Johnson is the Chief Operating Officer of VR, based in New York at VR's office located at 300 Park Ave., New York, New York. *Id.* at ¶¶ 6-7, 15-17. Johnson has worked for VR since 2005. *Id.* at ¶ 6. Upon information and belief, Johnson is a director of VR and VR Global, both of which are Cayman companies that hold VR's shares in Lapidem.

VR holds a stake in Promneftstroy (a litigant adverse to Petitioners in the Foreign Proceedings), via several offshore companies. Records on file with the Unified State Registrar of Legal Entities, the Russian Federation's corporate registry, identify the sole shareholder of Promneftstroy as Kirwan Offices S.a.r.l. ("Kirwan"), a limited liability corporation organized under the laws of Luxembourg. *Id.* at ¶ 8. Lapidem Limited ("Lapidem"), a Cayman Islands shell company created by VR and HBK Capital Management ("HBK"), holds 100,000 shares, or approximately 40 percent, of Kirwan. *Id.* at ¶ 12. The only other shareholder in Kirwan is Mascini Holdings Limited ("Mascini"), the shell company incorporated in Cyprus by

Renaissance Capital.[2]  Lapidem, a substantial shareholder in Kirwan, which is in turn the sole

shareholder of Promneftstroy, was incorporated by VR Capital.  *Id.* at ¶ 9.  On information and

belief, based on business records obtained from Consortium members, Johnson played a role at

the time of the auction and thereafter in the financing structure of the Consortium's purchase and

management of Promneftstroy.

### 2.    Richard Deitz

Richard Deitz is an individual who frequently travels to New York City and regularly

transacts business in the Southern District of New York.  Serio Decl., at ¶ 7.[3]  Notably, in 2012,

Deitz appeared before Hon. Sean H. Lane, United States Bankruptcy Judge for the Southern

District of New York as a "representative" of VR Global Partners L.P. in a Chapter 11

proceeding and provided a sworn testimony.  *See* Serio Decl., ¶ ¶ 7, 17.  Ex. T, Declaration of

Richard Deitz, dated June 21, 2012 ("Deitz Decl.").  Deitz has recently appeared in this Court in

connection with Promneftstroy's application for discovery from Eric Wolf.  Serio Decl., ¶ 7.

Deitz, formerly President of VR, is "president and a director of VR Advisory Services

Ltd.," which, according to his sworn declaration, "serves as the general partner and investment

adviser on behalf of VRGP [VR Global Partners L.P.]."  *See* Ex. T, Deitz Decl., ¶ 3.  According

to numerous SEC filings, Deitz holds high-level positions at several related entities that advise,

manage, control, and fund VR, including, but not limited to:

- Deitz is a General Partner, Manager, Director or Trustee of VR Global Offshore Fund

    Ltd., which is the "feeder fund" of VR Advisory Services Ltd. *See* Ex. P (Schedule D);

    *see also* Ex. H, at Section 7.B(1) ("Private Fund Reporting").

---

[2]  Petitioners obtained discovery pursuant to Section 1782 from a former Renaissance Capital employee, Robert
Foresman, in connection with the Foreign Proceedings.

[3]  References to "Ex." are to the exhibits to the Serio Declaration, unless expressly stated otherwise.

- Deitz is a "Control Person" and "Fund Manager" of VR Advisory Services. *See* Ex. O (Schedule A); *see also* Ex. H (Schedule A);

- Deitz is a "Control Person" with "Ownership Interests" and "Shareholder Voting Rights" of VR Capital Participation Ltd. *See* Ex. O (Schedule A).

As set forth in Schedule D of VR Advisory Services Ltd.'s Form ADV, filed with the SEC on April 30, 2015, Deitz is affiliated with each of the "related" entities that manage, advise, own, fund and control one and other. *See* Ex. H; *see also* Ex. O.

Upon information and belief, Deitz receives mail at VR Capital Group's New York office building, at 300 Park Avenue, Suite 1602, New York, NY 10022. *See* Ex. P.

### 3.    VR

VR's website specifically states it operates offices in five regions, including New York. Serio Decl. ¶ 16. Documents filed with the SEC for VR Advisory Services Ltd., a New York-registered entity and U.S. affiliate of VR, state that VR operates in New York through VR Advisory Service (USA) LLC ("VR Advisory"), and list VR Advisory's website address as HTTP://WWW.VR-CAPITAL.COM; the filings also list Johnson as its COO and "Control Person". *Id.* at ¶¶ 8, 14. The SEC filings indicate that "certain trading records, back up and statements of accounts belonging to private funds" are kept in New York, and lists VR's address as 300 Park Avenue, Suite 1602, New York, New York. *Id.* at ¶ 15. Further, VR's website identifies Ashok Raju as VR's contact for all inquiries related to its operations. *Id.* at ¶ 17. Raju's LinkedIn profile lists his current position as "Managing Director" of VR and states that he is located in the Greater New York City Area. *Id.* Notably, VR's contact number for Raju is the same New York telephone number VR included in at least one filing in Bankruptcy Court for the Southern District of New York. *Id.*

## C.   The Russian Government's Campaign Against Yukos Oil

Yukos Oil was Russia's largest crude oil producer and exporter until late 2003.  Along with its subsidiaries, Yukos Oil produced slightly less than 20% of the total crude oil produced in Russia and refined and marketed slightly less than 20% of the refined products in Russia.  Yukos Oil was generally regarded as Russia's most progressive, transparent, and successful multinational company.  As a result, it attracted a considerable amount of foreign investment from around the world.  In April 2004, Yukos Oil's market capitalization (on Russia's ruble-denominated MICEX exchange) was over $40 billion.

The Russian government began its attack on Yukos Oil in October 2003 when, in a move that has been widely condemned as politically motivated, the Russian government jailed Mikhail Khodorkovsky, Yukos Oil's Chief Executive Officer and largest indirect shareholder.  The Russian government's manufactured charges include, among others, alleged tax liabilities related to Yukos Oil.  Since that time, the Russian government has engaged in the ongoing persecution of numerous Yukos Oil officials and founders, and has effectively nationalized Yukos Oil by improperly assessing back taxes, improperly preventing Yukos Oil's voluntary payment of those alleged taxes, and forcing the sale of the company's assets at auction and then acquiring those assets, largely through state-owned vehicles including Rosneft.

The actions of the Russian government have been widely condemned by numerous international observers, including the United States Department of State, the Parliamentary Assembly of the Council of Europe, the Council on Foreign Relations, the Independent Task Force on U.S. Policy toward Russia, and observers both inside and outside Russia.  Indeed, on July 18, 2014, a highly distinguished arbitral tribunal sitting in The Hague under the auspices of the Permanent Court of Arbitration (PCA), held unanimously that the Russian Federation breached its international obligations under the Energy Charter Treaty (ECT) by destroying

Yukos Oil and appropriating its assets, and as a result must pay more than $50 billion to the shareholders of the former Yukos Oil. The tribunal found, among other things, that "the auction of Yuganskneftegaz, Yukos Oil's primary oil production subsidiary, was "rigged" and amounted to "a devious and calculated expropriation" by the Russian Federation. *Hulley Enter. Ltd. v. The Russian Fed'n*, PCA Case No. AA 226, Final Award, at 40, 255, 339 (Jul. 18, 2014), *available at* http://www.italaw.com/documents/2664. The tribunal further found that the bankruptcy proceedings in which Yukos Oil's remaining assets were auctioned were "the final act of destruction of the company by the Russian Federation." *Id.* at 376. In addition, on July 31, 2014, the European Court of Human Rights, after having established several violations of the European Convention on Human Rights by the Russian Federation, ordered the Russian Federation to pay Yukos shareholders a total of $2.51 billion dollars as just satisfaction.

As a result of the Russian Federation's unlawful and confiscatory actions discussed above, Russian state-owned energy companies eventually acquired nearly all of Yukos Oil's assets through a series of sham auctions. Rebgun, Yukos Oil's liquidator in the Russian bankruptcy proceedings, managed each of these auctions.

**D.     Auction of Yukos Finance's Assets**

Yukos Finance was a Dutch subsidiary of Yukos Oil. On August 17, 2006, the District Court of Amsterdam admitted Rebgun, in his role as liquidator in the Yukos Oil bankruptcy, as an interested party to Dutch litigation concerning Yukos Finance shares that had been ongoing in the Netherlands. Pending the proceedings, Rebgun scheduled an auction of Yukos Finance shares on August 15, 2007 in Moscow.

Because Rosneft – the Russian state-owned oil company that acquired the majority of the Yukos assets – did not want to become involved in the litigation surrounding Yukos Finance in the Netherlands, Rosneft sought out a third party to act as its proxy in this matter. Rosneft

reached out to Stephen Lynch, who had previously successfully bid on Yukos assets through his company Monte Valle. Lynch assembled the Consortium, including VR, to support a bid. As Rebgun permitted only pre-approved bidders to participate in the Yukos Finance auction, the Consortium obtained Promneftstroy, one such approved bidder, from Rosneft. Promneftstroy bid on and won the "auction" of, *inter alia*, 100% of Yukos Finance's issued and outstanding shares for approximately $304 million. The only other bidder, Versar, was an obscure shell company with no known business operations that bid and lost several of the bankruptcy auctions. The winning bid was less than $10 million higher than the starting bid and represented less than one-third of Yukos Finance's actual value.

**E.     VR's Participation in the Yukos Finance Auction**

VR was a member of the Consortium that orchestrated and participated in the auction of Lot 19. VR was intimately involved in the scheme to purchase Lot 19 at the rigged auction and provided funds to purportedly purchase shares in Yukos Finance fully aware that the auction was rigged, and that Rebgun, Rosneft, and the Russian Government were all conspiring with the Consortium to guarantee that Promneftstroy would "win" the auction and that the Consortium would come into possession of Yukos Finance.

**F.     Johnson and Deitz Participated In and Have Knowledge of the Yukos Finance Auction**

In Johnson's roles as the Chief Financial Officer, Chief Operating Officer, and Director of VR, and Director of VR Global, Johnson has been privy to all of the investment decisions made by both companies. Given Johnson's high-ranking position at the company, he knew the circumstances that led VR to invest in Promneftstroy and purchase Lot 19. Johnson, like the other central players in the Consortium, believed that the funding structure he had created was reasonable because the auction of Lot 19 was rigged.

On information and belief, based on business records obtained from Consortium members, Johnson played a central role at the time of the auction and thereafter in the funding structure of the bid on Lot 19, VR's funding of Lapidem, and in turn the funding for Kirwan, which is the sole shareholder of Promneftstroy, the approved bidder acquired by the Consortium through Kirwan, for purposes of making the bid on Lot 19. Johnson has in-depth knowledge regarding the transaction and its aftermath, including the payment of fees in relation to the Dutch litigation. Given Johnson's leadership roles at VR generally, as well as his specific role in coordinating the Lapidem structure and the overall funding of the transaction, it is obvious that he has access to documents relevant to the foreign proceeding.

Deitz, in his role as President of VR Capital, played a key role in the orchestration of the rigged auction and purchase of Yukos Finance. He was involved in the financing structure of the deal, and "contacted Yukos' former managers and its main shareholder, GML, to seek their approval before going ahead with the auction." Serio Decl., ¶ 10. Deitz discussed VR Capital's involvement as a funding source for the winning bid in the auction of Lot 19 in news reports in the days following the auction. *Id.*, ¶ 11 and Ex. K.

## G.   Previous Efforts of Other Parties to Obtain Discovery Under 28 U.S.C. § 1782 in the Southern District Of New York and the Northern District Of Texas

This is not the first time that former Yukos Oil entities and associated parties have sought discovery relating to the Yukos Finance auction through the Section 1782 process. Godfrey and Misamore, defendants in multiple Dutch Proceedings relating to the Yukos assets, sought discovery in October 2007 from VR, Deitz, and other potential witnesses in this District. The Court in that instance denied discovery because the entities and persons from whom discovery was sought, were not sufficiently "found" within the District, with the exception of Deitz. While Deitz was sufficiently "found" in the District, the Court did not order discovery from Deitz

because he did not reside, work, or regularly transact business within 100 miles of the District as required by Federal Rule of Civil Procedure 45(c). *See In re Godfrey*, 526 F. Supp. 2d 417 (S.D.N.Y. 2007) ("*In re Godfrey* (S.D.N.Y.)"). Godfrey and Misamore did not appeal this decision.[4] In *In re Godfrey* (S.D.N.Y.), the Court found that VR was not sufficiently "found" in the District as the company did not have an office or personnel in the District. Today, Deitz transacts business regularly in this District in connection with several VR affiliates, and VR advertises its presence in New York and has personnel working in its New York office. *See supra*, at 8. And because Johnson lives in the District, the requirements of Federal Rule of Civil Procedure 45(c) are met as to him.

On September 8, 2008, Yukos Hydrocarbons Investments Ltd. filed an application in the Northern District of Texas pursuant to Section 1782 for an order permitting discovery of Consortium member HBK and Benjamin Heller (collectively, the "Texas Witnesses"), who contributed funds used by Promneftstroy to acquire the shares of Yukos Finance at the auction. *See In re Application of David Godfrey and Bruce Misamore*, No. 3:08-mc-00107 (N.D. Tex. Sept. 8, 2008) ("*In re Godfrey (NDTX)*"). The court granted discovery and later denied the Texas Witness's motion to quash subpoenas issued under the application. *See In re Godfrey (NDTX)*, No. 3:08-mc-00107, No. 23 (N.D. Tex. Mar. 24, 2009). "Considering the twin aims of § 1782, to provide an efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts, . . . the Court exercises its discretion to permit the discovery under

---

[4] Judge Rakoff also noted in dicta his conclusion that the discretionary factors did not weigh in favor of discovery, "because the connection to the United States is slight at best and the likelihood of interfering with Dutch discovery policy is substantial." *Id.* at 424. However, as discussed below, Dutch courts are in fact receptive to discovery obtained in this manner. Indeed, evidence obtained as a result of discovery in *In re Godfrey* (N.D. Tex.), No. 3:08-mc-00107, No. 23 (N.D. Tex. Mar. 24, 2009) was accepted by the Amsterdam District Court in the Foreign Proceedings. Meerdink Decl. at ¶ 27.

§ 1782(a)." *Id.* at 18.  As a direct result of the Texas court issuing the subpoena permitting

discovery of the Texas Witnesses under Section 1782, a key document was revealed relating to

Promneftstroy's rigging the auction of Lot 19.  The evidence has been submitted and accepted by

the Amsterdam District Court in the Foreign Proceedings.[5]

On October 29, 2009, Yukos Hydrocarbons Investment Ltd. filed an application in the

Southern District of New York, *ex parte*, to authorize the issuance of a subpoena requiring

Robert Foresman (of Consortium member Renaissance Capital), to appear for deposition as well

as to produce documents to be used in connection with the deposition under Section 1782.  On

November 4, 2009, the Court approved the application and issued the requested subpoena against

Foresman.  Foresman moved to quash the subpoena and the Court granted Foresman's motion,

finding that although all "prerequisites for lending the court's assistance for discovery in aid of a

foreign proceeding [were] met," the subpoena would have required Foresman to travel over 100

miles from where he resided, was employed, or regularly transacted business, contrary to Rule

45(c).  *In re Application of Yukos HydroCarbons Inv. Ltd.*, No. 5:09-MC-00078 (NAM, DEP),

No. 22, 2009 WL 5216951, at *1 (N.D.N.Y. Dec. 30, 2009).

On September 22, 2014, after learning that Robert Foresman was residing in this District,

Godfrey and Stichting Administratiekantoor Financial Performance Holdings filed an application

in this District pursuant to Section 1782 for an order permitting for the testimony of Robert

Foresman.  *See In re Application of David Godfrey and Stichting Administratiekantoor Financial

Performance Holdings*, No. 14 Misc. 00316 (S.D.N.Y Sept. 22, 2014) ("*In re Godfrey &

Stichting* (S.D.N.Y.)").  In the relevant Foreign Proceeding, Plaintiffs initiated court proceedings

in the Netherlands against Rosneft, Yukos CIS, and related persons asserting that the bankruptcy

---

[5]  This document is the subject of a protective order.

and subsequent liquidation of Yukos Oil was an unlawful expropriation of private assets in

violation of international law and Dutch public order, and that Rosneft is therefore not entitled to

the assets of Yukos Finance's Armenian Branch.  This Court granted discovery under Section

1782.  *See id.* No. 6 (S.D.N.Y. Sept. 23, 2014).  Petitioners took deposition discovery from

Foresman on November 4, 2014.

### III.    SECTION 1782 AUTHORIZES THE THIRD-PARTY DISCOVERY PETITIONERS SEEK, AND THE DISCRETIONARY FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING PETITIONERS' REQUESTED DISCOVERY

### A.    Applicable Legal Principles

Applications for discovery in aid of a foreign proceeding are governed by Section

1782(a) of Title 28, United States Code, which provides that federal district courts may order

discovery for use in a foreign or international tribunal from persons residing in or found in the

district.  28 U.S.C. § 1782.[6]  Where the information sought is relevant, it is "presumptively

discoverable under § 1782."  *In re Bayer*, 146 F.3d at 196.  "Consistent with the statute's modest

*prima facie* elements and Congress's goal of providing equitable and efficacious discovery

procedures, district courts should treat relevant discovery materials sought pursuant to Section

1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to

justify the denial of the application."  *Id.* at 195; *see also In re Application of Sarrio S.A. for*

*Assistance Before Foreign Tribunals*, 173 F.R.D. 190, 193 (S.D. Tex. 1995) ("The history of

---

[6]    Section 1782 provides: "(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. . . .  A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."

section 1782 indicates that Congress intended federal courts to provide broad assistance to foreign litigants who request permission to conduct discovery in the United States.").

The threshold requirements of Section 1782(a) are:  (1) the persons from whom discovery is sought must reside in or be found in this district; (2) the discovery must be for use in a proceeding in a foreign tribunal; and (3) the applicant must be an "interested person."  *Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  When all three requirements are met, the decision to grant the request rests with the district court.  *Id.* at 260-61; *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 290 (S.D.N.Y. 2010), *as corrected* (May 10, 2010), *aff'd sub nom Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) ("Once the statutory requirements are met, a district court is free to grant discovery in its discretion.") (internal citation omitted); *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997).

In *Intel*, the Supreme Court further articulated the following factors the district court should consider when determining whether to grant an application pursuant to Section 1782(a):  (i) whether the person from whom discovery is requested is a party to the foreign proceeding; (ii) the nature of the foreign tribunal, the character of the foreign proceeding and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or policies of the foreign tribunal; and (iv) whether the discovery sought is unduly intrusive or burdensome.  *Intel*, 542 U.S. at 264-65.

The discovery Petitioners seek in the present application satisfies each statutory requirement and the discretionary factors outlined by the Supreme Court in *Intel* weigh heavily in favor of granting petitioners' requested discovery.

16

**B.    The Information Sought Is Highly Relevant and Presumptively Discoverable**

The discovery Petitioners seek is for use in proceedings before a foreign tribunal:  the proceedings are currently pending in the Court of Appeals of Amsterdam.  *See* Meerdink Decl. at ¶ 23.  In the Main Action, Applicants argue that the District Court of Amsterdam rightfully held, in its October 31, 2007 judgment, that the actions taken by Yukos Oil's bankruptcy trustee, Eduard Rebgun, have no effect in the Netherlands because the bankruptcy of Yukos Oil contravened fundamental principles of due process and thus violated Dutch public order. *Id.* at ¶ 7.  In both the Main Action and the Damages Action, Petitioners argue that Promneftstroy colluded with Rosneft and Rebgun to rig the auction of the shares in Yukos Finance.  In the Damages Action, Petitioners further argue that Lynch was instrumental in rigging the auction and should be held personally liable for the damage inflicted on Yukos International by unlawfully enforcing the Freezing Order. *Id.* at ¶ 19.

As detailed above, both Johnson and Deitz have personal knowledge that is relevant to show that the bankruptcy of Yukos Oil, in particular the bankruptcy auctions, violated international law and Dutch public order.  For instance, Promneftstroy and related parties allege in the Foreign Proceedings that Yukos Finance was auctioned off after a process of competitive bidding in an open auction.

Petitioners seek to obtain discovery from Johnson and Deitz concerning their actions related to Promneftstroy, including in their respective capacities as Chief Financial Officer of VR and President of VR that is relevant to rebut Promneftstroy's contentions.  Petitioners further seek to obtain document discovery from VR, a key member of the Consortium's bid for Lot 19 and the process leading up to the auction.  Petitioners are particularly interested in the participation and knowledge of Johnson, Deitz and VR in the auction of Yukos Finance, the financing of Promneftstroy's bid for the Yukos Finance shares, the management of

Promneftstroy through shell companies, and due diligence performed in connection with the

Yukos Finance auction.  This discovery is necessary in order to further demonstrate that the

bankruptcy auctions of Yukos Oil were rigged and that the assets were sold in a corrupt auction

process in which Promneftstroy played an instrumental role.

Under Dutch law, parties are allowed to further substantiate their position and submit

further evidence at any point during the litigation.  *Id.* at ¶ 23.  Parties are free to improve and

supplement their arguments on appeal, to state additional facts and to submit new evidence.

Deposition transcripts and documents obtained pursuant to this Application are therefore

admissible in the appeal proceedings and may be submitted any time prior to final pleadings that

have not yet been scheduled, and are anticipated in the first half of 2016.  *Id.*

**C.      Petitioners' Request Meets the Statutory Requirements of Section 1782**

      **1.      Johnson, Deitz and VR Are Found Within this District**

The first threshold requirement for Section 1782 discovery is met because Johnson, Deitz

and VR are found in the Southern District of New York.  *See Gushlak v. Gushlak*, 486 F. App'x

215, 218 (2d Cir. 2012).

Johnson's employment and residence in New York are sufficient for Johnson to be

"found" in the District as required by Section 1782.  *See In re Edelman*, 295 F.3d 171, 180 (2d

Cir. 2002) ("We think . . . § 1782(a) supports a flexible reading of the phrase 'resides or is

found'").  In addition, Johnson is subject to service of a subpoena in the District.  *See id.*  ("We

hold that if a person is served with a subpoena while physically present in the district of the court

that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that

district.").

Deitz frequently visits New York and is subject to service of a subpoena in the District.

*See id.*  In addition, Deitz "regularly transacts business" in person in the New York, as required

pursuant to Fed R. Civ. P 45(c).  *See Halliburton Energy Servs., Inc. v. M–I, LLC,* No.

H06MC00053, 2006 WL 2663948, at *2 (S.D.Tex. Sept. 15, 2006).

VR operates an office in New York.  Serio Decl. at ¶¶ 7-8, 14-17.  Operating an office in

the District is sufficient to show that a corporation is found or resides within the District for

purposes of Section 1782.  *See In re Bank of Cyprus Pub. Co. Ltd.*, 2011 WL 223168, at *2

(S.D.N.Y. Jan. 21, 2011) ("[The witness] has an office in Manhattan and is therefore located in

the Southern District of New York."); *see also Ahmad Hamad Algosaibi & Bros. Co. v. Standard*

*Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("The respondents have

offices and do business in Manhattan and thus "reside" in the Southern District of New York.");

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp.*

*LLC*, 2014 WL 3404955, at *4 (S.D.N.Y. July 9, 2014); *In re Kreke Immobilien KG*, 2013 WL

5966916, at *3 (S.D.N.Y. Nov. 8, 2013) (holding that the bank from which discovery was being

sought was found within the Southern District of New York where it operated offices in the

jurisdiction).

## 2.      The Discovery Sought Is Intended For Use in a Foreign Proceeding

The second threshold requirement for Section 1782 discovery is met because the

requested discovery is for proceedings pending before a foreign tribunal.  The Foreign

Proceedings are before the Court of Appeals of Amsterdam.  The Dutch Courts of Appeal permit

the submission of new evidence prior to final pleadings – which are yet to be scheduled – to

further substantiate both the grounds for the appeal as set out in the statement of appeal and the

defense as set out in the statement of defense on appeal.  Any information obtained pursuant to

this Application can therefore be used in the Foreign Proceedings.  Meerdink Decl. at ¶ 23.

3.     **Each of the Petitioners Is an Interested Person**

Finally, the third threshold requirement of Section 1782 is met because, as parties to the

Dutch Proceedings, Petitioners are unquestionably "interested person[s]." *See Lancaster*

*Factoring Co. v. Mangone,* 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to

§ 1782 makes plain that 'interested person' includes 'a party to the foreign . . . litigation.'")

(citing S. Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782,

3789). Indeed, a litigant in a foreign proceeding in a foreign tribunal "may be the most common

example of the interested person(s) who may invoke § 1782. *Intel*, 542 U.S. at 256.

**D.     The *Intel* Discretionary Factors Weigh Heavily In Favor of Granting Petitioners' Application**

1.     **The Witnesses Are Not Parties to the Dutch Proceedings**

The Supreme Court has acknowledged that "nonparticipants in the foreign proceeding

may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the

United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 264.

Neither Johnson, Deitz nor VR are parties to the Dutch Proceedings, and indeed

discovery could not be taken from them without the aid of an American court. *See* Meerdink

Decl. ¶ 20. Accordingly, this factor weighs in favor of granting this Application. *See e.g.*,

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d

434, 439 (S.D.N.Y 2011) ("Certainly the fact that respondents are non-parties weights in favor of

granting the petition since, as non-parties to the foreign proceedings, the foreign courts could not

themselves order respondents to produce the requested discovery."); *In re Application of*

*Gemeinshcaftspraxis Dr. Med. Schottdorf,* CIV.M19-88 BSJ, 2006 WL 3844464, at *5-6

(S.D.N.Y. Dec. 29, 2006).

2. **The Nature of the Foreign Tribunal, the Character of the Dutch Proceeding and the Amsterdam Court's Receptivity to Assistance Favor Granting Petitioners' Application**

"Receptivity" is not a question of whether the foreign court would or could permit this particular discovery. The Supreme Court in *Intel* explicitly found that Section 1782(a) does not "categorically bar a district court from ordering production of documents when the foreign tribunal or the 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction." 542 U.S. at 259-60.

In fact, while the discovery that Petitioners seek would be unavailable to Petitioners without the aid of an American court, the Amsterdam Court is likely to be receptive to the requested discovery:

> A basic principle of Dutch civil procedure law is that it has an open and liberal system of evidence. Under Dutch law, parties have a great amount of freedom as to how they submit evidence supporting their position. There are few requirements and few formalities.

*See* Meerdink Decl. ¶ 24. In addition, although the Second Circuit has held that there is no requirement that the petitioner show that the evidence is admissible in the foreign proceedings, the evidence sought here will be admissible in the Foreign Proceedings. *Brandi-Dohrn v. IKB Deutsche Industriebank*, 673 F.3d 76, 82 (2d Cir. 2012). Indeed, evidence obtained from the Texas Witnesses through the prior Section 1782 application has been submitted and accepted by the Amsterdam District Court in other related Foreign Proceedings. *Id.* at ¶ 20. As the requested discovery is relevant to the subjects of the Foreign Proceedings, the Amsterdam Courts will likely consider it important in assessing all claims and defenses. *Id.* at ¶ 31.

The Dutch Supreme Court has also accepted the use of evidence obtained through U.S. discovery. Dutch Supreme Court, February 6, 1998, NJ 1999, 479 (*Kinetics Tech. Int'l v. Mol).* The Dutch courts' willingness to receive evidence obtained in this way is based upon the

principle of Dutch civil evidentiary law that evidence can be provided by any means and that the valuation of such evidence is left to the discretion of the courts.  Meerdink Decl. ¶ 28. Furthermore, at least one Dutch court has explicitly lauded the discovery practices permitted under 28 U.S.C. § 1782, explaining:  "'Section 28 U.S.C. 1782 is aimed at the discovery of the truth.  The aim of discovering the truth also constitutes the basis of Dutch procedural law.'"  *In re Duizendstraal*, 1997 WL 195443, at *2 (quoting KG number 04.21.212/96, Utrecht District Court Judge in Summary Proceedings April 9, 1996, KG 1996, 158 (Apr. 9, 1996 (Neth.)).

Other United States district courts have noted that the Dutch court system is receptive to discovery obtained in the United States under Section 1782.  Dutch courts generally allow evidence obtained in foreign courts from third parties.  *See* Meerdink Decl. ¶ 27; *see also In re Qwest Communications Intern. Inc.*, 2008 WL 2741111, at *5 (W.D.N.C. July 10, 2008); *In re Application of Proctor & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004); *In re Chevron Corp.*, 2010 WL 8786202 (D.N.M. Sept. 13, 2010); *In re Godfrey* (N.D. Tex.), No. 3:08-mc-00107, Docket No. 23 (N.D. Tex. Mar. 24, 2009); *see also In re Duizendstraal*, No. 3:95-mc-150-X, 1997 WL 195443 (N.D. Tex. Apr. 16, 1997).

There is nothing that suggests that the Dutch court here would not be receptive to evidence obtained in this proceeding.[7]  Rather, it is likely that the court will consider evidence Petitioners obtain from Johnson, Deitz and VR in both Actions.  Meerdink Decl. ¶ 28.  As such, the second *Intel* factor weighs heavily in favor of granting Petitioners' requested discovery.

---

[7]   A "district court's inquiry into the discoverability of requested materials should consider only *authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782. . . . Authoritative proof is [limited to] language in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures."  *In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 2015 WL 3855113, at *5 (S.D.N.Y. June 22, 2015) (emphasis in original) (internal citations and quotation marks omitted).

### 3.     This Application Is Not an Attempt to Circumvent Dutch Law or Policy

The third discretionary *Intel* factor, whether the applicant is attempting to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," is meant to preclude bad faith misuses of the process. *Intel*, 542 U.S. at 265; *see also Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-268 (LEK/RFT), 2008 WL 3884374, at *9 (N.D.N.Y Aug. 18, 2008). Dutch courts have few requirements or formalities regarding the admission of relevant evidence. Meerdink Decl. ¶ 24. As such, Petitioners' Section 1782(a) petition does not attempt to circumvent any Dutch law or policy. Furthermore, the factual circumstances described above establish Petitioners' need to obtain relevant discovery regarding Johnson's knowledge of the funding of the sham auction, among other things, and VR's participation in the sham auction of the Yukos Finance shares with Rosneft's support.

The fact that, under Dutch procedures, Petitioner would not have access to third-party discovery outside the Netherlands does not mean Petitioners' Application is inconsistent with Dutch law and policy. As the Supreme Court observed in *Intel*, "'there is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.'" 542 U.S. at 261 (citing *In re Bayer AG*, 146 F.3d at 194). The Supreme Court further rejected the argument that a court should consider whether the requested discovery would be available in the foreign jurisdiction or whether "United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id.* at 263.

There is no evidence here of any bad faith misuse of process; rather the discovery Petitioners seek here is consistent with Petitioners' right to present a case. Petitioners seek discovery relevant to the Foreign Proceedings because the targets of the discovery are found here, in this District, and not as an attempt to circumvent foreign restrictions. As such, the third *Intel* factor also weighs heavily in favor of granting Petitioners' requested discovery.

### 4.    The Discovery Is Neither Unduly Burdensome Nor Intrusive

Petitioners' discovery request is neither unduly burdensome nor intrusive.  Petitioners seek a single deposition from each of Johnson and Deitz, and document discovery limited to those issues relevant to the Foreign Proceedings.  *See London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008) (finding no undue burden "[g]iven the need for the evidence, and the minimal invasion required" where Section 1782 request was narrowly tailored).  Petitioners request discovery from Johnson, Deitz and VR concerning their actions related to Lapidem, Kirwan, Promneftstroy, and the Yukos Finance auction that occurred on August 15, 2007.  There is no question that Johnson, Deitz and VR possess knowledge and information related to whether the auction was conducted at arm's length, the decision-making regarding the financing of the Company, which entities provided the funding used to finance Promneftstroy's "winning" bid at the auction, and the management of Promneftstroy.  As high level executives of VR, Johnson and Deitz would not have permitted VR to invest millions of dollars in the foreign venture without conducting significant amounts of due diligence, in this case likely including numerous conversations and meetings with the other members of the Consortium, Rosneft, and associated individuals concerning the anticipated auction.

In applying Rule 45, which limits unduly burdensome discovery, to a Section 1782 petition, "it must be remembered that they are meant to be broadly and liberally construed in favor of permitting discovery to take place."  *In re Sarrio S.A.*, 173 F.R.D at 198 (citing *Hickman v. Taylor*, 329 U.S. 493 (1947)).  As the requested discovery is neither unduly burdensome nor oppressive, the fourth and final *Intel* factor likewise weighs heavily in favor of granting Petitioners' request for discovery.

**E.     Ex Parte Relief Is Appropriate Under Section 1782(a)**

An ex parte proceeding is specifically contemplated and authorized under Section 1782(a).  As an alternative to a noticed motion, a party may move *ex parte* for an order directing a third party to produce documents and testify at a deposition.  Following the entry of the order, the third party may respond or otherwise plead.  *See, e.g.*, *John Deer Ltd. v. Sperry Corp.*, 754 F.2d 132, 134 (3d Cir. 1985) (ex parte motion granted, with ten days' leave to respond or plead). The third party may always be afforded an opportunity to address the discovery sought.

## IV.     CONCLUSION

Based on the foregoing and accompanying papers, Petitioners respectfully request that this Court grant Petitioners' ex parte application in its entirety.

Dated:     New York, New York           Respectfully Submitted,
           September 29, 2015

Robert F. Serio
Anne M. Coyle
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10016-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
*Attorney for Petitioners David Godfrey, Yukos Finance B.V., and Yukos International UK B.V.*